UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

JASON W. ABNEY, individually     )
on behalf of all similarly situated,     )
    )
    Plaintiffs,     )
    )
vs.     )
    )
R. J. CORMAN RAILROAD     )
GROUP, LLC     )
    )
    Defendant.     )

*__Electronically filed__*

Case No. 5:17-cv-00260-EBA

## JOINT MOTION TO APPROVE SETTLEMENT & DISMISS CASE

The named Plaintiff Jason Abney, on behalf of himself and all Opt-In Plaintiffs ("Plaintiffs"), and Defendant R.J. Corman Railroad Group, LLC, hereby move this Honorable Court for entry of an Order: (1) approving the Parties' Settlement (attached hereto as Exhibit A), (2) dispensing with the Court's hearing schedule pursuant to the Amended Order [D.E. 37], and (3) dismissing this action in its entirety, with prejudice. The Parties state as grounds the following:

## I.   Procedural History

Named Plaintiff filed this case on June 13, 2017 alleging violations of the Fair Labor Standard's Act's overtime provisions. [D.E. 1]. Defendant filed an answer and thirteen affirmative defenses on July 10, 2017. [D.E. 4]. Named Plaintiff moved for conditional certification of an FLSA class of Operators/Laborers on July 14, 2017. [D.E. 9 & 10]. Defendant opposed Plaintiff's motion on August 4,

2017. [D.E. 13]. Plaintiff replied on August 18, 2017. [D.E. 14]. On August 29, 2017 the Honorable Court granted Plaintiff's motion for conditional certification. [D.E. 18].

Notice pursuant to the Court's Order [D.E. 18] was sent to all putative class members. In toto 135 Operators/Laborers opted into the lawsuit. Each opt-in affirmatively consented to be represented by named Plaintiff's counsel, and to have named Plaintiff prosecute the above captioned case on his behalf and make decisions concerning litigation on his behalf, including negotiating a resolution on their behalf. See consents to join. Defendant produced schedules, pay and time records for all Plaintiffs. Counsel for Plaintiffs communicated with the named Plaintiff and all opt-in Plaintiffs to secure additional information and communicate with them regarding the progression of the case.

The Parties agreed to mediate the matter after informal discovery with the Honorable John Roach of Lexington, Kentucky. On December 10, 2017, the Hon. John Roach formally noticed mediation for January 23, 2018. Formal mediation occurred in Nicholasville, Kentucky, before the Hon. John Roach[1] on the 23rd of January 2018.   The mediation continued until the following day. The parties

_____

[1] John C. Roach is a former Chief Justice of the Kentucky Supreme Court. He is experienced in class/collective action wage and hour litigation and was instrumental to the parties facilitating final resolution of this matter. He also serves as an arbitrator for the American Arbitration Association. In particular he has defended large wage and hour class actions (Toyota), presented briefing to the Kentucky Supreme Court on wage and hour class actions (on behalf of the Kentucky Chamber of Commerce) and has presided as a mediator in previous FLSA collective action with over a hundred opt-in plaintiffs. See *Desimoni v. TBC Corp.*, Case No. 2:15-cv-366-SPC-CM (M.D. Fla.)[D.E. 177 & 180].

reached an agreement through mediation on January 24, 2018 after extensive negotiations. On January 26, 2018, the Parties reduced their Agreement to writing, an executed copy of which is attached hereto as Exhibit A for the Court's approval.

The Parties consented to a magistrate judge's authority. [D.E. 31]. On January 25, 2018, the Honorable Magistrate Judge Edward B. Atkins was referred the case. [D.E. 32]. The Parties notified the Honorable Court of a settlement; the Parties initially moved for approval of their settlement via the scheduling of a telephonic hearing. [D.E. 34]. Such a procedure is not uncommon in FLSA collective actions. In *Lipford v. Atlas Railroad Construction, LLC*, Case No. 1:15-cv-1174-DJS (N.D.N.Y.)[D.E. 49 & 51], the parties on May 2, 2016 consented to the magistrate judge, after an FLSA collective action was settled before a mediator, placed the terms of the settlement agreement on the record on May 11, 2016 and had the settlement approved. Similarly in *Hamilton v. G.W. Peoples Contracting Co., Inc.*, Case No. 1:15-cv-1290-ATB (N.D.N.Y.)[D.E. 30, 31 & 32], the parties consented to the magistrate judge on September 23, 2016, requested a telephonic hearing for approval of an FLSA collective action settlement, conducted the hearing on October 4, 2016, and on October 5, 2016 the court found the settlement fair and reasonable via text order. The practice of having the magistrate judge approve an FLSA collective action via a hearing is not limited to New York. For instance, in the Indiana case of *Finnemore v. Railworks Track Services, Inc.*, Case No. 1:16-cv-395-TAB-LJM (S.D. Ind.)[D.E. 34, 35, 38 & 40], the parties consented to the magistrate judge on November 22, 2016 and placed the terms of the FLSA collective action settlement agreement on the record on December 28, 2016, where it was approved

by the court—the parties had notified the court that payment was to be delivered in January of 2017 so the hearing was held prior to the due date. In *Weathersby v. Technology Systems, Inc.*, Case No. 1:12-cv-9963 (N.D. Ill.)[D.E. 29 & 110] the district judge heard the motion for approval orally, in an FLSA collective action, and approved the settlement via minute entry.

Parties do not always move for approval of a settlement in an FLSA collective action. For instance, in North Dakota the following two cases were FLSA collective actions that resolved and were dismissed via stipulation. See *Dickinson v. Pat's Offroad, Inc.*, Case No. 4:13-cv-149-DLH-CSM (N.D.)[D.E. 28 & 29]; and *Ball v. Dynamic Support Services, L.C.*, 4:15-cv-36-DLH-CSM (N.D.)[37, 40, 64, 65, 67 & 68]. Even in Florida some FLSA collective actions are dismissed by stipulation. See *Abdul-Rasheed v. Kablelink Communications, LLC*, Case No. 8:13-cv-879-SCB-MAP (M.D. Fla.)[D.E. 44, 112 & 113].

In other circumstances, parties may stipulate to dismissal and contemporaneously move for approval of a settlement agreement via paper only or merely move for approval by motion. The following FLSA collective actions were dismissed via stipulation and/or contemporaneous approval of a settlement in Wisconsin, Texas, Illinois and Florida. See *Ayala v. Startek Workforce Solutions, LLC*, Case No. 3:16-cv-367-BBC (W.D. Wis.)[D.E. 9, 20 & 21]; *Noecker v. Topaz Financial Services, Inc.*, Case No. 5:10-cv-81-HLH (W.D. Tex.)[D.E. 10, 36 & 41]; *Lee v. Midwest Technical Institute, Inc.*, Case No. 3:15-cv-3344-SEM-TSH (C.D. Ill.)[D.E. 21, 47 & 49]; *Whitaker v. Kablelink Communications, LLC*, Case No. 8:13-cv-2093 (M.D. Fla.)[D.E. 18, 56 & 57]; *Trentman v. RWL Communications, Inc.*,

Case No. 2:15-cv-89-SPC-CM (M.D. Fla.)[D.E. 22, 55 & 59]; *Desimoni v. TBC Corp.*,

Case No. 2:15-cv-366-SPC-CM (M.D. Fla.)[D.E. 44, 60, 176, 177 & 180].

The Sixth Circuit Court of Appeals does not mandate that FLSA collective actions be approved. *Steele v. Staffmark Investments, LLC*, 172 F.Supp.3d 1024, 1026 (W.D. Tenn. 2016). Yet some district courts, including *Steele*, have held that approval is necessary. *Id.*; compare to *Blackman v. Americare Long Term Speciliaty Hospital, LLC*, Case No. 2:10-cv-2645-AJT-TMP (W.D. Tenn.)[D.E. 36, 41, 57, 59 & 60](in conditionally certified FLSA class, in the same district as *Steele*, did not require approval of settlement and accepted the parties joint stipulation of judgment demonstrating that there is much flexibility in concluding FLSA collective action). This Honorable Court is correct that the district court in *Ross v. Jack Rabbit Services, LLC*, 2016 WL 7320890 *2 (W.D. Ky. 2016) compared the FLSA to Rule 23(e)(1)(C), Fed.R.Civ.P. However, the *Ross* citation for such a comparison between Rule 23 and the FLSA to *Steele* is incorrect. Nowhere in *Steele* is Rule 23 cited, discussed or referenced. On the topic of the FLSA and Rule 23 the Sixth Circuit Court of Appeals, last year, held that the more stringent standard of Rule 23 does not apply in FLSA actions. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. June 21, 2017)("the FLSA's 'similarly situated' standard is less demanding than Rule 23's standard). In *Crawford v. Lexington-Fayette Urban County Gov.*, 2008 WL 4724499 *2 (E.D. Ky. 2008), it was noted that a court's role in approving a FLSA settlement differs from Rule 23. The Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982) is most often cited as the basis for approving a FLSA settlement.   There is a "'strong presumption' in

favor of finding a settlement fair." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

## II.    Settlement Terms

For purposes of this Motion, the Parties stipulate and agree that the Court has jurisdiction over the claims of the named Plaintiff and all Opt-In Plaintiffs who consented to join this action in writing. Pursuant to the settlement agreement Defendant agrees to pay a total of One Million Twelve-Thousand Seven-Hundred and Sixteen Dollars and Ninety Cents ($1,012,716.90) of which a total of $675,144.60 will consist of Plaintiffs' damages (2/3 of the settlement amount) and $337,572.30 (1/3 of the settlement amount) as attorneys' fees and costs. The terms of the settlement include a payment to each of the Plaintiffs in the following amounts:

|     | Last Name  | First Name      | Gross Total  |
| --- | ---------- | --------------- | ------------ |
| 1   | Abney      | Jason W.        | $10,069.51   |
| 2   | Agee       | Lesley Doug     | $3,208.87    |
| 3   | Alexander  | Rojon Quadir    | $1,049.19    |
| 4   | Anderson   | Jimmy W.        | $5,088.39    |
| 5   | Anderson   | Kenneth         | $15,323.70   |
| 6   | Atwood     | Jacob           | $500.00      |
| 7   | Avera      | Christopher     | $1,371.32    |
| 8   | Bailey     | Josh            | $6,460.43    |
| 9   | Baker      | Michael Brandon | $5,949.96    |
| 10  | Barbour    | Sidney Dante    | $1,738.71    |
| 11  | Barker     | Joseph          | $11,202.08   |
| 12  | Beasley    | Anthony         | $8,038.98    |
| 13  | Bellamy    | Travis J.       | $10,428.95   |
| 14  | Bennett    | Lavanadla       | $500.00      |

| 15 | Bishop | Johnny | $500.00 |
| 16 | Bishop | Kody | $500.00 |
| 17 | Bland Jr. | Curtis | $872.76 |
| 18 | Blanton | Mart | $7,949.34 |
| 19 | Breedlove | Cody | $3,742.53 |
| 20 | Brock | Daniel | $1,552.66 |
| 21 | Brown | Matthew | $3,324.42 |
| 22 | Brown | Jeffery D. | $16,728.35 |
| 23 | Brown | Colby B. | $11,896.21 |
| 24 | Burch | Jerry W. | $5,443.21 |
| 25 | Burch | Ethan | $1,963.50 |
| 26 | Calton | David | $697.00 |
| 27 | Campbell | Cody | $866.99 |
| 28 | Campbell | Amos Corbett | $1,694.32 |
| 29 | Caudill | David | $1,023.30 |
| 30 | Chavez Mezu | Jose Jesus | $1,111.13 |
| 31 | Chitwood | Tim | $6,363.38 |
| 32 | Collins | Terry | $1,002.56 |
| 33 | Collins | Timothy W. | $3,014.65 |
| 34 | Combs | Edgar W. | $500.00 |
| 35 | Crabtree | Lawrence | $500.00 |
| 36 | Craft | Patrick | $4,066.08 |
| 37 | Cress | Patrick | $1,042.66 |
| 38 | Croney | Caleb | $9,642.61 |
| 39 | Dempsey | Ryan Benjamin | $1,728.32 |
| 40 | Denney | Bryan | $4,529.16 |
| 41 | Denson | Jordan | $500.00 |
| 42 | Dunaway | Justin | $1,728.32 |
| 43 | Dunaway | Dylon | $515.66 |
| 44 | Emerson | Trae | $500.00 |
| 45 | Flint | Jacob Michael | $500.00 |
| 46 | Freeman | Bobby | $1,303.32 |
| 47 | Fugate | Jerry JD | $5,846.82 |
| 48 | Fyffe | Elvis | $10,535.56 |

| 49 | Gibson | Andrew Cody | $1,517.24 |
| 50 | Gibson | Greg | $1,201.33 |
| 51 | Gilbert | Leon Midas | $3,555.50 |
| 52 | Gilbert | Keith | $14,184.63 |
| 53 | Glass | Jordan | $500.00 |
| 54 | Glover | Kenneth | $500.00 |
| 55 | Greene | Tim | $500.00 |
| 56 | Grigsby | Warren | $500.00 |
| 57 | Halsell | Richard Alexander | $2,355.83 |
| 58 | Hamby | Matthew | $1,388.32 |
| 59 | Hill | Pete | $628.05 |
| 60 | Hinkle | Cedric | $991.66 |
| 61 | Holbrooks | Brandon R. | $3,919.70 |
| 62 | Howard | Matthew D. | $2,592.48 |
| 63 | Hurd (Ashley Hurd) | Estate of Gary | $6,100.31 |
| 64 | Hurt | Jesse | $1,091.33 |
| 65 | Hutchason | Andrew | $2,285.54 |
| 66 | Johns Jr. | Charles | $4,676.84 |
| 67 | Johnson | Cameron | $3,337.93 |
| 68 | Kelley | Timothy | $7,338.29 |
| 69 | Kelly | Lewis Mason Lee | $1,341.65 |
| 70 | King | Teddy | $14,721.96 |
| 71 | Lambert | Kevin | $4,591.86 |
| 72 | Lawrence | Wenford | $2,969.31 |
| 73 | Lay | Donnie | $7,624.45 |
| 74 | Litton | Aaron Chase | $912.33 |
| 75 | Lunsford | Michael Allen | $1,061.00 |
| 76 | Manning | Paul R. | $18,084.17 |
| 77 | Manning | TyJuan M. | $1,818.99 |
| 78 | Marcum Jr. | James Michael | $5,143.43 |
| 79 | Marshall | Eric | $545.41 |
| 80 | Martinez | Roberto | $15,241.59 |
| 81 | Mattingly | James | $3,099.65 |
| 82 | McDonald | Scott J. | $9,230.88 |

| 83 | McKnight | Mark A. | $9,689.79 |
|---|---|---|---|
| 84 | Michael | Kenneth | $7,186.23 |
| 85 | Music | Nathan | $651.66 |
| 86 | Napier | Austin | $940.19 |
| 87 | Neace | Leslie L. | $6,459.81 |
| 88 | Noble | Wesley Dakota | $3,675.05 |
| 89 | Noble | Harold H. | $5,283.25 |
| 90 | Odom | Darius | $500.00 |
| 91 | Osborne | Kenneth R. | $3,541.64 |
| 92 | Phillips | Kyle | $9,221.15 |
| 93 | Phillips | Jacob | $1,729.50 |
| 94 | Phillips | James | $4,014.33 |
| 95 | Pitts | Jesse Lee Adam | $3,295.85 |
| 96 | Price | Anthony | $2,214.38 |
| 97 | Ramirez Jr. | Protacio | $6,792.35 |
| 98 | Raney | Jody | $26,185.25 |
| 99 | Ratliff | Jared | $6,773.36 |
| 100 | Richardson | Jeremy | $4,882.75 |
| 101 | Riddell | Kevin | $7,642.39 |
| 102 | Robinson | Roland | $13,175.84 |
| 103 | Rodriguez Crespo | Victor L. | $500.00 |
| 104 | Rose | Euel Lester | $8,533.94 |
| 105 | Ross | Channing | $20,112.58 |
| 106 | Ryan | Jeffrey P. | $1,338.08 |
| 107 | Sallee | Caleb | $500.00 |
| 108 | Scott Jr. | James Preston | $8,978.74 |
| 109 | Shepherd | Jared Martin | $9,587.77 |
| 110 | Simmons | Irvin | $7,958.85 |
| 111 | Sizemore | Dennis Lee | $4,019.77 |
| 112 | Sizemore | Ray | $4,796.70 |
| 113 | Smith | Brandon R. | $4,926.19 |
| 114 | Smith | Jackie T. | $5,343.63 |
| 115 | Smith | David | $2,889.98 |
| 116 | Smith | Gene Scott | $6,170.67 |

| 117 | Smith | William G. | $5,640.45 |
| 118 | Smith | Gene D. | $6,568.21 |
| 119 | Spratlin | Dustin | $1,727.14 |
| 120 | Stout | Michael G. | $3,627.39 |
| 121 | Teague | Edward Todd | $6,732.33 |
| 122 | Thomas | Mark Anthony | $3,752.96 |
| 123 | Thompson Jr. | Ronnie | $19,175.60 |
| 124 | VanWinkle | Michael | $1,444.99 |
| 125 | Vargas Marquez | Rito | $17,917.46 |
| 126 | Wagers Jr. | Ernest | $2,055.22 |
| 127 | Walton | Kenneth Dane | $6,323.34 |
| 128 | Webb | Zachary | $6,213.46 |
| 129 | Wells | James | $3,822.46 |
| 130 | West | Alexander Dale | $866.99 |
| 131 | West | Taylor | $500.00 |
| 132 | White | Kenneth | $22,641.84 |
| 133 | White | Daniel | $11,767.61 |
| 134 | Williams | Richard C. | $914.92 |
| 135 | Wright | Bill Michael | $2,906.98 |
| 136 | York | Corey | $866.99 |
| | | **Total** | **$675,144.60** |

The amounts payable above were calculated based on each Plaintiff's dates of employment, estimated weekly hours worked, varying hourly wage rates and number of weeks within the applicable statutory period. For example, if an employee earned $15 per hour for "job site" work, he was assigned an overtime rate of $22.50 per overtime hour worked during each week he reported working at least forty (40) hours which was then multiplied by the number of applicable statutory weeks available to each employee based on his dates of employment and the date his Consent to Join form was filed. Overtime payable was calculated using both Defendant's records and the Plaintiff's responses to questionnaires regarding their

varying work schedules, distances traveled and total hours on the job each week. The Plaintiffs' reported travel distances varied from as little as one (1) hour to as much as fifteen (15) hours when they were required to work away from home. Not all travel reported was compensable. Likewise, Defendant paid the Plaintiffs for some of their travel during some of the applicable weeks (for example, many Plaintiffs reporting being paid a flat travel rate of 4 travel hours – at their regular rate – whenever they drove between 4 and 8 hours for a job). The settlement provides for a minimum payment of $500.00 (for individuals who did not work for Defendant within the applicable three-year statutory period) to a maximum payment of $26,185.25. The average recovery per person equals $9,856.13. The lead Plaintiff (Abney) will recover a total of $10,069.51, just slightly above the class average. Eighty-five percent (85%) of the class members will receive more than $1,000.00 as a result of the settlement.

The Agreement does not provide for payment of incentive awards to any Plaintiff. The Agreement does not include a general release. The Agreement does not include a confidentiality provision. The Agreement does not contain a reversion clause. Any funds not collected within 60 days of tender will be transferred as payments to the Appalachian Research and Defense Funds, Inc. as *Cy Pres* recipient.

As a condition of the Agreement, Defendant will tender checks on or before February 9, 2018 pursuant to the settlement agreement to the Office of Hon. John Roach (mediator in this matter) to be held in escrow pending the Court's approval of the settlement and dismissal of this action.

On February 2, 2018, each Plaintiff was sent written notice of status of the case, the terms of the Agreement, the specific amounts payable under the agreement (including back wages, attorneys' fees and costs), and their right to object to the same. Moreover, the named Plaintiff executed the settlement agreement on January 30, 2018 and counsel reached out to all opt-in Plaintiffs via email and telephone calls during the week of January 29th. To date, none of the 136 Plaintiffs have raised an objection to the terms of the Agreement. To the contrary, each Plaintiff who has communicated either verbally or in writing with Plaintiffs' counsel regarding the Agreement has expressed great satisfaction with the results obtained in this case. As of this motion, counsel for Plaintiff has spoken via telephone with approximately three-fourths of the class regarding the settlement.

## III.   Memorandum of Law

This case involves the compromise of a disputed claim under the FLSA. Under *Lynn's Food Store, Inc. v. United States*, when the parties reach a compromise settlement of an action brought by employees against their employer to recover back wages under the FLSA, the proposed settlement may be presented to the district court for approval.  679 F.2d 1350, 1353-55 (11th Cir. 1982).  To approve the settlement, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised. *Davis v. JP Sports Collectibles Inc.*, 2016 WL 7474571 at *1 (M.D. Fla. 2016) (*citing Lynn's Food Stores*).

The Eleventh Circuit found settlements to be permissible when the lawsuit is brought by employees under the FLSA for back wages because the lawsuit:

provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

There is little doubt that the settlement reached in this case was the result of a highly-contentious, adversarial process. *See supra*. In determining the reasonableness of a settlement, the Court may consider the following factors:

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of Plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the counsel.

*Davis*, 2016 WL 7474571, at *2, (*citing Dorismond v. Wyndham Vacation Ownership, Inc.*, 2014 WL 2861483, at *2 (M.D. Fla. June 24, 2014) *and Leverson v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 N.6 (11th Cir. 1994). Each of these factors weighs in favor of approval in this case as the settlement reached was the result of contentious litigation.

This Honorable Court, in its amended order, cited twelve issues to be addressed by the Parties. [D.E. 37 p. 3]. The Parties address all twelve issues in this

joint motion and proffer to the Court that a hearing on this matter is not necessary based upon this detailed written motion. The Plaintiffs desire to receive their settlement funds as soon as possible, and the funds will be available for delivery by February 9, 2018 per the settlement agreement, subject to court approval and dismissal of the action.

### 1. The Settlement Agreement is a Settlement of a Bona Fide Dispute

### A.    Plaintiffs' Claims.

Named Plaintiff filed this action on behalf of himself and other similarly situated Operator/Laborers against Defendant alleging violations of the overtime provisions of the FLSA. [D.E. 1]. Plaintiff alleges that Defendant's compensation plan violated federal law because it did not provide pay for all travel time pursuant to the FLSA. Plaintiffs sought and obtained, over strenuous objection, conditional certification of a putative class of current and former Operators/Laborers who: (1) worked for Defendant within the applicable statutory period; and (2) worked more than forty (40) hours per week but who did not receive all overtime pay for compensable travel time.

### B.    Defenses.

Defendant denied and continues to deny that it violated the FLSA. Defendant denies that it has acted wrongfully toward any of the Plaintiffs. Defendant denies that it violated any law, statute, rule, regulation or ordinance of the United States, the Commonwealth of Kentucky, any other state, or any county or municipality, and denies that it has breached any of the policies or practices of its own or its related

entities. Defendant notes there are substantial and bona fide legal disputes in the raised claims.

### C.    Parties Agree

The Parties agree that there are disputes about when Plaintiffs travelled. The time of day travelled and the day of the week travel occurred would determine if any damages under the FLSA are due. Specifically, 29 C.F.R. § 785.39 limits compensable travel time to travel that crossed over an employees' regular hour of works. For instance, if an employee regularly worked 6:00 a.m. to 5:00 p.m. travel after 5:00 p.m. and before 6:00 a.m. would not be compensable. Next, the FLSA uses a seven day work week and only hours that are overtime or minimum wages are recoverable under the FLSA. In other words if travel occurs in a week where no overtime is worked and the hourly rate does not fall below minimum wages there is no liability. Unlike a case where an employee is entitled to an exact amount of monies this case involved many factual disputes that create a *bona fide* dispute as to whether damages are owed under the FLSA.

### 2. No Fraud or Collusion

The settlement was not the result of fraud or collusion but rather a long fought battle. Indeed, there were and continue to be substantial and *bona fide* disputes concerning liability in this case, including but not limited to legal disputes about the construction of travel time, legal disputes about the application of 29 C.F.R. § 785.39 to the facts of this case, disputes about whether the Plaintiffs travel occurred during normal work hours, disputes about whether any alleged violations

were willful, and disputes about whether Defendant's pay policies were adopted and implemented in good faith.

No Plaintiff is receiving an incentive award. Each Plaintiff has been treated equally. The minimum payment to each Plaintiff is $500.00; a three year statute of limitations was used; liquidated damages are being paid to the Plaintiffs; the average settlement amount is $9,856.13; the median settlement is $3,541.64; and the named Plaintiff is not receiving the highest recovery. Eighty-five percent (85%) of the class members will receive more than $1,000.00 as a result of the settlement. No monetary amounts were shared by either party prior to mediation. Each party was represented by experienced counsel. Mediation occurred with a former Kentucky Supreme Court Justice, who is an arbitrator for the American Arbitration Association and practicing labor and employment lawyer with specific experience in wage and hour law, including travel pay pursuant to 29 C.F.R. § 785.39.

**3. The Case is Complex, Continued Litigation Would be Expensive & Uncertain**

There are 136 Plaintiffs. The issues are complex as travel pay involves intricate factual issues that combine burdens of proof, evidence and expert opinions. Furthermore, decertification of a collective action is always a concern. Continued litigation would likely have led to at least twenty (20) depositions, which would have cost an average of $1,500.00 per side in costs (excluding attorneys' fees), the retention of experts which would likely have cost $20,000.00 per side, potentially 136 sets of written discovery and over six figures of attorneys' fees for each side.

The troubles of continued litigation are exemplified by the *Ross v. Jack Rabbit Services, LLC* case cited by the Honorable Court. In *Ross* at one point 236 plaintiffs were in the case and by the time of settlement the class was down to 66 plaintiffs. *Id.* at *6. In the case at hand all 136 Plaintiffs remain in the case, but continued litigation could potentially reduce the number. Similarly continued litigation would cost Defendant monies and disturb business operations.

### 4. Parties Exchanged Adequate Information to Determine Damages

Defendant supplied Plaintiffs with schedules, payroll information and time records sixty days prior to mediation. Counsel for Plaintiffs reviewed the data, analyzed the information and obtained information directly from the Plaintiffs prior to mediation. At mediation the Hon. John Roach facilitated negotiations which included exchange of information, arguments on the law, arguments on the facts, analysis of the case and a resolution reached at arms-length. This settlement only occurred after a ruling from the Court on Plaintiffs' motion to facilitate notice, exchange of information and formal mediation.

### 5. The Probability of Plaintiffs' Success on the Merits is Uncertain

There is a risk that some or all of Plaintiffs' claims will be unsuccessful at trial as recovery on even the most straight-forward FLSA claims is uncertain. *See, e.g. Gilson, et al. v. Country Club Motors, et al.*, Case No. 6:12-cv-01423-GKS-GJK (M.D. Fla. 2014) (Order granting Defendant's Motion for Judgment as a Matter of Law in FLSA case where the U.S. Department of Labor found a violation). In *Rojas v. Garda CL Southeast, Inc.*, 2015 WL 5084135 (S.D. Fla. 2015), an FLSA class of over 100 was decertified by the district court and summary judgment was granted

against the named plaintiff. In *Rojas* defendant only paid overtime to its driver/helper employees over fifty hours, so the claim was for the ten hours of overtime between 40 and 50. Nevertheless, *Rojas* lost his individual claim based upon an exemption to the FLSA and the class was decertified, which led to an appeal and over ninety individual actions being filed in state court. Similarly in *White v. Baptist Memoria Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012), the collective action was decertified and the named plaintiff lost her claim. In the case at hand, the Parties stipulate and agree that it is in their best interests to resolve this matter and that the amounts payable represent a reasonable compromise of a disputed claim. Neither party is guaranteed a certain outcome through continued litigation.

### 6. The Plaintiffs are Recovering Significant Monies

The range of recovery in this case is from zero for some Plaintiffs to the amount recovered through this settlement. The Parties agree that if the issues in this case had been decided by a judge and/or jury, the Plaintiffs might have recovered less than the payments provided for in this Agreement. Further, the Parties agree that if a judge or jury determined that one or more Plaintiffs was entitled to back wages under the FLSA, the amount of back wages that might have been awarded was uncertain, because it could have been less, depending upon findings of fact, findings of law, and application of the law to the facts. In the absence of settlement there is a material and substantial risk that the Plaintiffs might lose their case and recover nothing, and further that under the specific facts of this case, even if they prevailed in litigation, the Court might have decided not to

award liquidated damages, or to limit damages to a two-year statute of limitations as there currently exist no orders confirming Defendant willfully violated the FLSA or acted in reckless disregard. The third year statute of limitations would have adversely impacted a large portion of the class. The Agreement uses three years of damages for the Plaintiffs, and the minimum amount paid to each Plaintiff suggest that those Plaintiffs would recover less or nothing if the case continued.

### 7. Counsel Opine that the Settlement is Fair & Reasonable

The Parties relied on the advice of highly-qualified counsel. The Parties' counsel are experienced FLSA litigators. Counsel for Defendant has significant experience practicing law and represents businesses in a wide range of labor and employment matters, including class and collective claims under the FLSA. Defense Counsel David Irvin has been the counsel for Defendant since it was formed; defense Counsel Catherine Wright is an experienced labor and employment litigator, and Defendant's in house counsel has actively assisted its engaged counsel throughout the case.

Bernard R. Mazaheri and Christina Thomas Mazaheri exclusively represent employees in a variety of labor and employment law matters including class and collective actions. In 2015, they published an article in the American Bar Association's Journal of Labor & Employment Law titled "Collective Notice of Individuals Rights Under the Fair Labor Standards Act: Court Enforcement of Pre-Arbitration Safeguards in Section 16(b) Actions." 30 ABA J. Lab. & Emp. L. 325 (Sept. 15, 2015). They have litigated many FLSA collective actions in multiple states throughout the United States and have participated in numerous speaking

engagements for their practice area(s). For instance, Mr. Mazaheri presented on a panel on FLSA Collective Actions in Washington D.C. at the American Bar Association Labor & Employment Annual Conference in November 2017, which included Professor Daniel R. Ortiz[2] of the University of Virginia School of Law; and is scheduled to present on a panel with Ellen Kearns[3] about the FLSA in New York for the Practicing Law Institute on February 13, 2018, which will be broadcast in multiple cities.

### 8. The Settlement does not include a Confidentiality Provision

The settlement agreement does not include a confidentiality provision.

### 9. The Settlement does not include a general release, it is only a release of wage and hour claims

Defendants are paying each of the 136 Plaintiffs alleged unpaid overtime and liquidated damages. Defendants deny that they owe the monies. Yet, the settlement provides for significant damages to each of the Plaintiffs. The settlement agreement does not include a general release. The settlement, if approved, ends the dispute between the Parties. The settlement agreement is for wage and hour only.

---

[2] Prof. Ortiz argued before the U.S. Supreme Court on behalf of the employees in *Epic Systems Inc. v. Lewis*, a case involving FLSA collective actions in October 2017.

[3] Kearns is recognized nationally for her wage and hour expertise, having served as Editor-in-Chief of the first, second and third editions of the ABA/BNA Treatise, The Fair Labor Standards Act. See https://www.constangy.com/people-Ellen-Kearns.

### 10. All 136 Plaintiffs have been notified of the Settlement

The named Plaintiff executed the settlement agreement on January 30, 2018. Prior to executing the agreement named Plaintiff discussed the litigation, settlement and agreement for a total of 2½ hours with counsel. Eighty-Nine percent (89%; 121 of 136) of the Plaintiffs have provided emails to counsel. 100% of these 121 Plaintiffs have received emails regarding settlement. None have objected to the settlement. Counsel has attempted to personally call every single Plaintiff, and has spoken personally with the majority of the class regarding settlement. Most, if not all, have been very thankful and happy. Some have asked if they can get an advance, and most have inquired about when they can get their checks. No one has objected. Counsel has sent by regular U.S. Mail to every opt-in Plaintiff letters detailing the settlement.

### 11. The Settlement will be allocated pursuant to the table

The settlement will be allocated pursuant to the table included in this motion and the settlement agreement. Defendant has or will issue two checks per Plaintiff (W2 and 1099) and deliver them to the Honorable John Roach on or before February 9, 2018. If the Honorable Court approves the settlement and dismisses the action, counsel for Plaintiff will coordinate with the mediator's office of picking up the checks as soon as practicable and sending them to each Plaintiff via certified mail or private delivery service (FedEx or UPS).

### 12. Attorneys' fees and costs account for 1/3 of the settlement

Counsel for Plaintiff is taking 1/3 of the total settlement amount. By February 9, 2018 Defendant will have provided a total of $1,012,716.90 for the

benefit of Plaintiffs of which $337,572.30 (1/3 of the settlement amount) will be for attorneys' fees and costs. In *Crawford* the district court found 1/3 of the FLSA damages of the employees on top of separately negotiated attorneys' fees to have been reasonable. 2008 WL 4724499 *12. Here, counsel is seeking only 1/3 of the settlement, which is fair and reasonable. There are significant risks in litigation, and counsel has had classes decertified and sent to individual arbitration. Counsel has filed in decertified cases individual claims in court and arbitration, sometimes at great expense. Counsel has also lost FLSA cases at trial, where no monies were recovered. Counsel does not charge clients up front for fees or costs. Counsel took this case on contingency and expended efforts to investigate, file suit and secure notice to all putative class members. Two experienced attorneys have worked on this case. Attorney communications have occurred with 136 Plaintiffs. Indeed, plaintiffs' counsel's file contains more than 900 documents and over 600 electronic communication entries.

In conclusion, the terms of the Agreement are fair and each Plaintiff has received thorough written notice of terms of the Agreement and the amounts to be paid. The Agreement contains no general release, no incentive payments, and no confidentiality. Moreover, Defendant will have tendered the settlement funds to the Mediator as of February 9, 2018 so that prompt payment can be made as soon as a final order is entered in this case. To date, no Plaintiff has objected to the Agreement despite having the opportunity to do so.

WHEREFORE, the Parties respectfully request entry of an Order:

(1) releasing the Parties of the hearing dates in the Amended Order [D.E. 37];

(2) approving the Parties' Settlement Agreement attached hereto as <u>Exhibit</u>

<u>A</u>; and

(3) dismissing this action with prejudice.

Respectfully submitted this 6th day of February, 2018,

<u>/s/ Bernard R. Mazaheri</u>
Bernard R. Mazaheri
Christina Thomas Mazaheri
Morgan & Morgan
333 W Vine St Ste 1200
Lexington, Kentucky 40507
bmazaheri@forthepeople.com
cthomas@forthepeople.com
Tel - (859) 286-8368

*Counsel for Plaintiff(s)*

<u>/s/ David R. Irvin</u>
David R. Irvin
Catherine S. Wright
MOYNAHAN, IRVIN & MOONEY, P.S.C.
110 North Main Street
Nicholasville, Kentucky 40356
dirvin@mimfirm.com
cwright@mimfirm.com
Tel - (859) 859-724-4104
Fax - (859) 885-2307

*Counsel for Defendant*