# SETTLEMENT AGREEMENT

# AND

# RELEASE OF WAGE & HOUR CLAIMS

*Jason Abney, et al.*

*v.*

*RJ Corman Railroad Group, LLC*

**January 26, 2018**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Confidential Settlement Agreement and Release of Claims, along with all exhibits hereto (collectively, the "Settlement Agreement"), is entered into by and between RJ Corman Railroad Group, LLC ("RJ Corman"), on the one hand, and on the other hand, all current and former hourly employees who opted-into the litigation styled *Jason Abney, et al v. RJ Corman Railroad Group, LLC,* Case No. 5:17-cv-260, in the United States District Court for the Eastern District of Kentucky (the "Lawsuit") and specifically named plaintiff Jason Abney ("Abney") (collectively, with named plaintiff Abney unless otherwise noted, referred to as "Opt-in Plaintiffs") (complete list of Opt-in Plaintiffs attached as Exhibit A). Opt-in Plaintiffs are represented by Morgan &Morgan ("Plaintiffs' Counsel").

## RECITALS

WHEREAS, on June 13, 2017, named plaintiff Abney filed a putative Collective Action Complaint (the "Complaint") alleging that certain RJ Corman employees were not paid for time spent travelling to and from jobsites in which an overnight stay was required and therefore denied overtime compensation pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"); and

WHEREAS, on July 10, 2017, RJ Corman filed its Answer denying the material allegations of the Complaint and raising thirteen affirmative defenses; and

WHEREAS, on July 14, 2017, named plaintiff Abney filed a Motion for Conditional Certification and Facilitation of Court Authorized Notice; and, on August 29, 2017, over RJ Corman's objection, this Court granted named plaintiff Abney's Motion for Conditional Certification and Facilitation of Court Authorized Notice and approved a form Notice of Lawsuit and Consent to Join Collective Action. RJ Corman thereafter provided Plaintiffs' Counsel with a

list of hourly employees within the three-year FLSA statutory limitations period, including each employee's last known contact information. Plaintiffs' Counsel provided notice of the Lawsuit to those employees on or about September 20, 2017, along with instructions as to how to opt-into the Lawsuit; and

WHEREAS, a total of one hundred and thirty-six (136) current and former employees chose to opt- into the Lawsuit. By filing their opt-in consent forms with the Court, the Opt-in Plaintiffs consented to join the Lawsuit as party-plaintiffs. Further, they designated Abney as their representative, authorizing him to make decisions on their behalf concerning the lawsuit including negotiating a resolution of their claims; and

WHEREAS, in November 2017, the parties agreed to pursue early mediation and informed this Court of their agreement in their December 1, 2017 Joint Status Report; and

WHEREAS, prior to mediation, RJ Corman provided information regarding the Opt-in Plaintiffs to Plaintiffs' Counsel, including the dates of employment, the weeks worked, the projects worked, and the pay rates relating to the Opt-in Plaintiffs; and

WHEREAS, the parties voluntarily mediated the Lawsuit on January 23, 2017, in Nicholasville, Kentucky with well-respected mediator Hon. John Roach, Esq., and, after a lengthy, all-day mediation and discussions continuing after mediation, arrived at an agreement to settle the claims in the Lawsuit; and

WHEREAS, RJ Corman denies all of the allegations in the Lawsuit and any and all liability and damages of any kind to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit, and denies that this case could be litigated on a collective action basis, but nonetheless, without admitting or conceding any liability or damages whatsoever or the propriety of collective action status for trial purposes, has agreed to settle the Lawsuit on the

terms and conditions set forth in this Settlement Agreement to avoid the burden, expense and uncertainty of continuing the Lawsuit; and

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through the litigation process would require additional risk, discovery, time and expense; and

WHEREAS, Plaintiffs' Counsel have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit and other potential claims and have determined that in the view of the costs, risks, and delay of continued litigation and the challenges of attempting to try the matter on a representative basis balanced against the benefits of settlement, that the recovery as provided in this Settlement Agreement is in the best interests of the Opt-in Plaintiffs and that the recovery provided in this Settlement Agreement represents a fair and reasonable resolution of the Lawsuit; and

WHEREAS, the parties have agreed to settle this case as to all Opt-in Plaintiffs, all of whom are parties to this Settlement Agreement by virtue of Abney executing the Settlement Agreement on their behalf; and

WHEREAS, to the extent permitted in Paragraph 5 herein, this Agreement is intended to, and does, effectuate the full, final and complete resolution of all claims that were asserted or could have been asserted and that arise from or relate to facts brought forth in the litigation; and

WHEREAS, the parties have agreed that the settlement be limited to the wage and hour claims of the Opt-in Plaintiffs; and

WHEREAS, on January 24, 2017, the parties stipulated to jurisdiction of the Magistrate Judge assigned to the case for review of the settlement and dismissal of this action.

WHEREAS, the Parties agree to inform the Court of the terms of the settlement, the work

leading up to the resolution, the manner in which damages were ascertained, and the amount of attorneys' fees and costs.

NOW THEREFORE, the parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, the receipt and sufficiency of which is hereby acknowledged, do hereby agree as follows:

## AGREEMENT

1. <u>Definitions</u>: In addition to various terms defined elsewhere, the terms listed in this Section shall have the meanings ascribed to them for purposes of this Settlement Agreement.

   (a)   <u>Defendant's Counsel</u>. "Defendant's Counsel" refers to Moynahan, Irvin & Mooney, P.S.C. For purposes of any notices required under this Settlement Agreement, Defendant's Counsel shall refer to David R. Irvin, Esq. and Catherine Wright, Esq., Moynahan, Irvin & Mooney, P.S.C., 110 North Main St., Nicholasville, KY 40356.

   (b)   <u>Plaintiffs' Counsel</u>. "Plaintiffs' Counsel" refers to Morgan & Morgan. For purposes of providing any notices required under this Settlement Agreement, Plaintiffs' Counsel shall refer to Bernard Mazaheri, Morgan & Morgan, 333 W. Vine St., Suite 1200, Lexington, KY 40507.

   (c)   <u>Final Order and Judgment</u>. "Final Order and Judgment" refers to the Court's entry of the Order Approving Settlement and Final Judgment and Dismissal with Prejudice ("Final Order and Judgment") in the form attached hereto as Exhibit B (or a substantially similar form mutually agreeable to the parties).

2. <u>Court Approval</u>. The parties agree to jointly seek the Court's approval of this Settlement Agreement. As such, the parties will submit to the Court the Final Order and Judgment in the form attached hereto as Exhibit B on or before January 31, 2018. Should the Court require any other settlement materials to be submitted, the parties agree to submit such materials subject to each party's approval.

   The parties agree that this settlement is contingent upon the approval by the Court

of all terms of the Settlement Agreement, as well as the Court's entry of the Final Order

and Judgment in the form attached hereto as Exhibit B (or a substantially similar form

mutually agreeable to the parties). Should the Court not approve a term of this Settlement

Agreement, and/or fail to enter the Final Order and Judgment, the terms of this Settlement

Agreement will be null and void except that the parties may agree in writing to proceed

with a modified settlement and apply for Court approval of the modified settlement with

the modified settlement. In the event this Settlement Agreement shall become null and

void for any reason, the provisions of Rule 408 of the Federal Rules of Evidence will

apply to it, all conduct pursuant to its terms, and all negotiations surrounding it, and the

parties shall not use this Settlement Agreement or the discussions underlying it to the

disadvantage of the other. No admission of law or fact, or combination thereof, will be

found to exist as a result of this Settlement Agreement, its terms, or the parties' conduct

pursuant to them. If this Settlement Agreement fails to be approved or otherwise

consummated in accordance with its terms, the parties shall retain all rights to continue

their prosecution and defense of the Lawsuit, including the ability of Abney to move for

final class certification and RJ Corman to file a motion to decertify the conditionally

certified class and to contest the merits of the claims being asserted in the Lawsuit.

3.    Consideration.

    (a)    Total Settlement Amount. RJ Corman agrees to pay a total amount of One Million
Twelve-Thousand Seven-Hundred and Sixteen Dollars and Ninety Cents
($1,012,716.90) (the "Total Settlement Amount") to resolve all actual and
potential wage and hour claims of Opt-in Plaintiffs, as set forth more fully in
Paragraph 5 below, as well as all claims for attorneys' fees associated with the
Lawsuit. This Total Settlement Amount is inclusive of (1) all payments to be made
to Opt-in Plaintiffs pursuant to this Agreement, (2) all payments already received,
if any, by the Opt-in Plaintiffs as a result of this litigation; and (3) all attorneys'
fees and costs. RJ Corman's settlement liability, other than its share of payroll
taxes, shall not exceed $1,012,716.90 under any circumstances.

(b)    <u>Settlement Amount Allocation to Opt-in Plaintiffs</u>. Each Opt-in Plaintiff shall be allocated a share of the Total Settlement Amount. Plaintiffs' Counsel calculated the allocated shares based on individual assessment of each Opt-in Plaintiff's alleged estimated damages. The specific allocations are detailed in Exhibit A. RJ Corman has reviewed these allocations in detail and has no objection to these allocations.

(c)    <u>Settlement Amount Payable as Attorneys' Fees and Costs</u>. Plaintiffs' Counsel shall receive attorneys' fees and costs in the amount of Three Hundred Thirty-Seven Thousand, Five Hundred and Two Dollars and Thirty Cents ($337,572.30) as remuneration for all attorneys' fees, costs, and expenses borne as a result of the Lawsuit (costs and expenses making up $12,000 - $15,000 of the amount). Attorneys' fees shall consist of no more than thirty-three percent (33%) of the Total Settlement Amount.

(d)    <u>Tax Treatment</u>. For tax purposes, 50% of each Opt-in Plaintiff's payment pursuant to Paragraph 3(b) shall be treated as wages and 50% of such payment shall be treated as liquidated damages and interest. The portion treated as wages shall be paid net of all applicable employment taxes, including federal, state and local income tax withholding and the employee share of the Federal Insurance Contributions Act ("FICA") tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. The portion treated as liquidated damages and interest shall be paid without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. In the event that is it subsequently determined by any taxing authority that any Opt-in Plaintiff owes any additional taxes with respect to any money distributed under this Settlement Agreement, it is expressly agreed that liability for such taxes rests exclusively with that individual and that RJ Corman will not be responsible for payment of such taxes, including interest and penalties. RJ Corman is specifically authorized to comply with any garnishment, child support or other court orders regarding payments to an Opt-in Plaintiff. To the extent any such orders impact the payments described in Paragraph 3(b), RJ Corman will provide information to Plaintiffs' Counsel regarding the orders and impact.

Attorneys' fees and costs paid pursuant to Paragraph 3(c) shall be paid without

withholding and shall be reported to the IRS and Plaintiffs' Counsel under Plaintiffs'

Counsel's name and taxpayer identification number, which Plaintiffs' Counsel shall

provide for this purpose on an IRS Form 1099.

RJ Corman shall pay all employer payroll taxes imposed by applicable law,

including the employer's share of the FICA tax and any federal and state unemployment

tax, with respect to the amounts treated as wages. Opt-in Plaintiffs and Plaintiffs' Counsel shall be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Settlement Agreement (other than the employer payroll taxes specified in the immediately preceding sentence). The amounts payable under this settlement will not trigger any additional benefits or liabilities under RJ Corman's benefits plans, including any retirement or bonus plans in which Opt-in Plaintiffs participate or may have participated. Plaintiffs' Counsel and Abney, on behalf of themselves and all Opt-in Plaintiffs, acknowledge and agree that RJ Corman has provided no advice as to the taxability of the payments received pursuant to this Settlement Agreement.

5.  Release of Claims. By operation of this Settlement Agreement and entry of the Final Order and Judgment the Opt-in Plaintiffs forever and fully release RJ Corman and its parent companies, subsidiaries, affiliates, owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, divisions, insurers, benefit plans, plan fiduciaries, and/or administrators, and assigns, and all persons acting by, through, under or in concert with any of them, including any party that could have been named as a defendant in the Lawsuit (the "Released Parties"), from any and all claims, demands, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local or other applicable law, which any of the Opt-in Plaintiffs has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon claims for unpaid minimum wages, overtime, improper deductions, and other wage-related claims that otherwise relate to the Lawsuit or arise out of or relate to the

facts, acts, transactions, occurrences, events or omissions alleged in the Lawsuit and that

arose during any time that such Opt-in Plaintiffs worked for RJ Corman up until the date

of the entry of the Final Order and Judgment (the "Released Claims"). The Released

Claims include, without limitation, claims asserted in the Lawsuit and any other claims

based on alleged failure to provide minimum wage, failure to provide overtime pay,

improper deductions, denial of meal periods and rest breaks, failure to pay wages upon

termination, failure to keep records of hours worked or compensation due, retaliation, and

penalties for any of the foregoing, including without limitation claims under the FLSA

and the statutes and regulations of all states relating to the foregoing and/or any and all

other wage and hour requirements.

In addition, the Opt-in Plaintiffs hereby irrevocably and unconditionally release,

acquit, and forever discharge any wage and hour claim that they may have against the

Released Parties for attorneys' fees, costs, and administrative expenses, including claims

administrative expenses, and agree that any payments approved by the Court to Plaintiffs'

Counsel will be the full, final and complete payment of all attorneys' fees, costs and

expenses associated with their representation in the Lawsuit. RJ Corman shall have no

additional liability for any fees and costs associated with the Lawsuit. For the avoidance

of doubt, the Released Claims set forth above do not include a release of any other claims

other than the wage-related claims described in the immediately preceding paragraphs.

6.    No Admission of Liability or Appropriateness of Class Treatment. By entering into this

Settlement Agreement, RJ Corman admits no liability of any kind and RJ Corman

expressly denies any liability or wrongdoing. Accordingly, the parties agree that none of

them has prevailed nor shall this Settlement Agreement be construed as evidence that any

party has prevailed in this matter. The parties further agree that this Settlement Agreement

does not constitute a determination or admission that any group of similarly situated

employees exists to maintain a collective action under the FLSA.

7.     Process for Implementation and Approval of Settlement Agreement.

        (a) Timing of Events:

                (i)     Pursuant to Paragraph 2 herein, the parties will submit to the Magistrate
                        Judge the Final Order and Judgment in the form attached hereto as Exhibit
                        B on or before January 31, 2018. The parties will request that the
                        Magistrate explicitly approve of the form of the Final Order and Judgment
                        and that the Court retain jurisdiction over the settlement.

                (ii)    RJ Corman will mail via United States Mail or FedEx to Plaintiffs'
                        Counsel two checks for each Opt-in Plaintiff (one for wages, one for
                        liquidated damages) on or before **February 9, 2018**.
                        Upon entry of an Order approving the settlement, Plaintiffs' Counsel will
                        distribute the checks to the Opt-in Plaintiffs and Abney via United States
                        Mail or FedEx.

                (iii)   RJ Corman will pay the attorneys' fees and costs to Plaintiffs' Counsel
                        separate and apart from the amounts payable to the Opt-In Plaintiffs. RJ
                        Corman will deliver a check for attorneys' fees and costs to Plaintiff's
                        Counsel on or before **February 9, 2018**.

                (iv)    Each Opt-In Plaintiff shall have sixty (60) days from the date the
                        Settlement Funds are disbursed to claim the monies payable to them under
                        this Agreement. The unclaimed funds, if any, will be donated to The
                        Appalachian Research and Defense Fund, Inc. as *cy pres* recipient within
                        thirty (30) days after the expiration of the sixty-day claim period.

8.     Choice of Law. The enforcement of this Settlement Agreement shall be governed by and

        interpreted under the laws of the Commonwealth of Kentucky whether or not any party is

        or may hereafter be a resident of another state.

9.     Extension of Time. The parties may agree upon a reasonable extension of time for

        deadlines and dates reflected in this Settlement Agreement, without further notice to the

Court, subject to Court approval as to Court dates.

10.   No Waivers, Modifications, Amendments. No waiver, modification or amendment of the

terms of this Settlement Agreement shall be valid or binding unless in writing, signed by

or on behalf of all parties and then only to the extent set forth in such written waiver,

modification or amendment, subject to any required Court approval. Such written waiver,

modification, or amendment may be made by Abney on behalf of the Opt-in Plaintiffs.

Any failure by any party to insist upon the strict performance by the other party of any of

the provisions of this Settlement Agreement shall not be deemed a waiver of any of the

other provisions of this Settlement Agreement, and such party, notwithstanding such

failure, that party shall have the right thereafter to insist upon the specific performance of

any and all of the provisions of this Settlement Agreement.

11.   Agreement to Cooperate/Severability. The parties acknowledge that it is their intent to

consummate this settlement, and they agree to cooperate to the extent necessary to

effectuate and implement all terms and conditions of this Settlement Agreement and to

exercise their best efforts to accomplish the foregoing terms and conditions of this

Settlement Agreement. The provisions of this Settlement Agreement shall be deemed

severable, and the invalidity or unenforceability of any one or more of its provisions shall

not affect the validity or enforceability of any of the other provisions. However, the

Parties do not consent to piece meal modification of any settlement amount identified in

this Agreement.

12.   Sole and Entire Agreement. This Settlement Agreement constitutes the sole and entire

agreement of the parties concerning the subjects contained herein, and all prior and

contemporaneous negotiations and understandings between the parties shall be deemed

merged into this Settlement Agreement.

13. <u>No Prior Assignments</u>. The parties represent, covenant and warrant that, except as stated

herein, they have not directly or indirectly assigned, transferred, encumbered, or purported

to assign, transfer, or encumber to any person or entity any portion of any liability, claim,

demand, action, cause of action or rights herein released and discharged.

14. <u>Binding on Assigns</u>. This Settlement Agreement shall be binding on and inure to the

benefit of the parties hereto and their respective heirs, trustees, executors, administrators,

successors and assigns.

15. <u>Counterparts</u>. This Settlement Agreement shall become effective upon its execution,

subject to subsequent Court approval. The parties may execute this Settlement Agreement

in counterparts, and execution in counterparts shall have the same force and effect as if

the parties had signed the same instrument. Any signature made and transmitted by

facsimile or electronic mail in .pdf or similar format for the purpose of executing this

Settlement Agreement shall be deemed an original signature for purposes of this

Settlement Agreement and shall be binding upon the signing party.

16. <u>Signatories</u>. Each counsel or other person executing this Settlement Agreement on behalf

of any party hereto warrants that such person has the authority to do so. Any person

executing this Settlement Agreement on behalf of a corporate signatory hereby warrants

and promises for the benefit of all parties hereto that such person is duly authorized by

such corporation to execute this Settlement Agreement.

17. <u>Continuing and Exclusive Jurisdiction</u>. The parties shall request that the Court retain

continuing and exclusive jurisdiction over the enforcement and interpretation of this

Settlement Agreement. The denial, in whole or in part, of this request shall not terminate

this Settlement Agreement or otherwise affect the Court's ruling on approval of the Settlement Agreement.

18.     Captions. The captions or headings of the paragraphs in this Settlement Agreement are inserted for convenience or reference only and shall have no effect upon the construction of interpretation of any part of this Settlement Agreement

THE FOREGOING CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

Dated this 30th day of January, 2018.

Jason Abney

APPROVED AS TO FORM AND SUBSTANCE.

Bernard Mazaheri
Plaintiffs' Counsel

Dated this 30th day of January, 2018.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

RJ Corman Railroad Group, LLC

By: _____

Printed Name:  Edward J. Quinn, III
Title:    President & CEO

APPROVED AS TO FORM AND SUBSTANCE.

David Irvin, Esq.
Defendant's Counsel

Dated this 30th day of January, 2018.

# EXHIBIT A

## TO

## SETTLEMENT AGREEMENT
## AND
## RELEASE OF CLAIMS

*Jason Abney, et al.*

*v.*

*RJ Corman Railroad Group, LLC*

| Last | First | Balance Due by RJ | Gross Total |
|---|---|---|---|
| Abney | Jason W. | $10,069.51 | $10,069.51 |
| Agee | Lesley Doug | $3,208.87 | $3,208.87 |
| Alexander | Rojon Quadir | $1,049.19 | $1,049.19 |
| Anderson | Jimmy W. | $5,088.39 | $5,088.39 |
| Anderson | Kenneth | $2,667.89 | $15,323.70 |
| Atwood | Jacob | $500.00 | $500.00 |
| Avera | Christopher | $1,371.32 | $1,371.32 |
| Bailey | Josh | $489.54 | $6,460.43 |
| Baker | Michael Brandon | $5,949.96 | $5,949.96 |
| Barbour | Sidney Dante | $1,738.71 | $1,738.71 |
| Barker | Joseph | $11,202.08 | $11,202.08 |
| Beasley | Anthony | $8,038.98 | $8,038.98 |
| Bellamy | Travis J. | $10,428.95 | $10,428.95 |
| Bennett | Lavanadla | $500.00 | $500.00 |
| Bishop | Johnny | $500.00 | $500.00 |
| Bishop | Kody | $500.00 | $500.00 |
| Bland Jr. | Curtis | $258.51 | $872.76 |
| Blanton | Mart | $7,949.34 | $7,949.34 |
| Breedlove | Cody | $3,742.53 | $3,742.53 |
| Brock | Daniel | $1,552.66 | $1,552.66 |
| Brown | Matthew | $3,324.42 | $3,324.42 |
| Brown | Jeffery D. | $2,595.43 | $16,728.35 |
| Brown | Colby B. | $1,898.36 | $11,896.21 |
| Burch | Jerry W. | $5,443.21 | $5,443.21 |
| Burch | Ethan | $1,963.50 | $1,963.50 |
| Calton | David | $697.00 | $697.00 |
| Campbell | Cody | $866.99 | $866.99 |
| Campbell | Amos Corbett | $1,694.32 | $1,694.32 |
| Caudill | David | $1,023.30 | $1,023.30 |
| Chavez Mezu | Jose Jesus | $1,111.13 | $1,111.13 |
| Chitwood | Tim | $6,363.38 | $6,363.38 |
| Collins | Terry | $1,002.56 | $1,002.56 |
| Collins | Timothy W. | $3,014.65 | $3,014.65 |

| | | | |
|---|---|---:|---:|
| Combs | Edgar W. | $500.00 | $500.00 |
| Crabtree | Lawrence | $500.00 | $500.00 |
| Craft | Patrick | $4,066.08 | $4,066.08 |
| Cress | Patrick | $1,042.66 | $1,042.66 |
| Croney | Caleb | $1,480.06 | $9,642.61 |
| Dempsey | Ryan Benjamin | $1,728.32 | $1,728.32 |
| Denney | Bryan | $800.16 | $4,529.16 |
| Denson | Jordan | $500.00 | $500.00 |
| Dunaway | Justin | $1,728.32 | $1,728.32 |
| Dunaway | Dylon | $515.66 | $515.66 |
| Emerson | Trae | $500.00 | $500.00 |
| Flint | Jacob Michael | $500.00 | $500.00 |
| Freeman | Bobby | $1,303.32 | $1,303.32 |
| Fugate | Jerry JD | $5,846.82 | $5,846.82 |
| Fyffe | Elvis | $2,088.43 | $10,535.56 |
| Gibson | Andrew Cody | $1,517.24 | $1,517.24 |
| Gibson | Greg | $1,201.33 | $1,201.33 |
| Gilbert | Leon Midas | $3,555.50 | $3,555.50 |
| Gilbert | Keith | $2,292.26 | $14,184.63 |
| Glass | Jordan | $500.00 | $500.00 |
| Glover | Kenneth | $500.00 | $500.00 |
| Greene | Tim | $500.00 | $500.00 |
| Grigsby | Warren | $500.00 | $500.00 |
| Halsell | Richard Alexander | $2,355.83 | $2,355.83 |
| Hamby | Matthew | $1,388.32 | $1,388.32 |
| Hill | Pete | $628.05 | $628.05 |
| Hinkle | Cedric | $991.66 | $991.66 |
| Holbrooks | Brandon R. | $3,919.70 | $3,919.70 |
| Howard | Matthew D. | $2,592.48 | $2,592.48 |
| Hurd (Ashley Hurd) | Estate of Gary | $6,100.31 | $6,100.31 |
| Hurt | Jesse | $1,091.33 | $1,091.33 |
| Hutchason | Andrew | $2,285.54 | $2,285.54 |
| Johns Jr. | Charles | $4,676.84 | $4,676.84 |
| Johnson | Cameron | $3,337.93 | $3,337.93 |

| Kelley | Timothy | $7,338.29 | $7,338.29 |
| Kelly | Lewis Mason Lee | $1,341.65 | $1,341.65 |
| King | Teddy | $2,252.33 | $14,721.96 |
| Lambert | Kevin | $4,591.86 | $4,591.86 |
| Lawrence | Wenford | $2,969.31 | $2,969.31 |
| Lay | Donnie | $7,624.45 | $7,624.45 |
| Litton | Aaron Chase | $912.33 | $912.33 |
| Lunsford | Michael Allen | $1,061.00 | $1,061.00 |
| Manning | Paul R. | $1,879.67 | $18,084.17 |
| Manning | TyJuan M. | $1,818.99 | $1,818.99 |
| Marcum Jr. | James Michael | $5,143.43 | $5,143.43 |
| Marshall | Eric | $545.41 | $545.41 |
| Martinez | Roberto | $2,443.10 | $15,241.59 |
| Mattingly | James | $3,099.65 | $3,099.65 |
| McDonald | Scott J. | $9,230.88 | $9,230.88 |
| McKnight | Mark A. | $9,689.79 | $9,689.79 |
| Michael | Kenneth | $7,186.23 | $7,186.23 |
| Music | Nathan | $651.66 | $651.66 |
| Napier | Austin | $940.19 | $940.19 |
| Neace | Leslie L. | $6,459.81 | $6,459.81 |
| Noble | Wesley Dakota | $3,675.05 | $3,675.05 |
| Noble | Harold H. | $5,283.25 | $5,283.25 |
| Odom | Darius | $500.00 | $500.00 |
| Osborne | Kenneth R. | $3,541.64 | $3,541.64 |
| Phillips | Kyle | $1,224.54 | $9,221.15 |
| Phillips | Jacob | $1,729.50 | $1,729.50 |
| Phillips | James | $1,610.58 | $4,014.33 |
| Pitts | Jesse Lee Adam | $3,295.85 | $3,295.85 |
| Price | Anthony | $2,214.38 | $2,214.38 |
| Ramirez Jr. | Protacio | $6,792.35 | $6,792.35 |
| Raney | Jody | $3,849.51 | $26,185.25 |
| Ratliff | Jared | $757.06 | $6,773.36 |
| Richardson | Jeremy | $4,882.75 | $4,882.75 |
| Riddell | Kevin | $7,642.39 | $7,642.39 |
| Robinson | Roland | $2,360.28 | $13,175.84 |

| | | | |
|---|---|---|---|
| Rodriguez Crespo | Victor L. | $500.00 | $500.00 |
| Rose | Euel Lester | $8,533.94 | $8,533.94 |
| Ross | Channing | $2,390.63 | $20,112.58 |
| Ryan | Jeffrey P. | $1,338.08 | $1,338.08 |
| Sallee | Caleb | $500.00 | $500.00 |
| Scott Jr. | James Preston | $1,686.36 | $8,978.74 |
| Shepherd | Jared Martin | $1,489.89 | $9,587.77 |
| Simmons | Irvin | $1,177.33 | $7,958.85 |
| Sizemore | Dennis Lee | $4,019.77 | $4,019.77 |
| Sizemore | Ray | $4,796.70 | $4,796.70 |
| Smith | Brandon R. | $4,926.19 | $4,926.19 |
| Smith | Jackie T. | $5,343.63 | $5,343.63 |
| Smith | David | $2,889.98 | $2,889.98 |
| Smith | Gene Scott | $6,170.67 | $6,170.67 |
| Smith | William G. | $489.39 | $5,640.45 |
| Smith | Gene D. | $6,568.21 | $6,568.21 |
| Spratlin | Dustin | $1,727.14 | $1,727.14 |
| Stout | Michael G. | $3,627.39 | $3,627.39 |
| Teague | Edward Todd | $6,732.33 | $6,732.33 |
| Thomas | Mark Anthony | $3,752.96 | $3,752.96 |
| Thompson Jr. | Ronnie | $2,661.98 | $19,175.60 |
| VanWinkle | Michael | $1,444.99 | $1,444.99 |
| Vargas Marquez | Rito | $2,775.85 | $17,917.46 |
| Wagers Jr. | Ernest | $2,055.22 | $2,055.22 |
| Walton | Kenneth Dane | $6,323.34 | $6,323.34 |
| Webb | Zachary | $6,213.46 | $6,213.46 |
| Wells | James | $3,822.46 | $3,822.46 |
| West | Alexander Dale | $866.99 | $866.99 |
| West | Taylor | $500.00 | $500.00 |
| White | Kenneth | $3,268.31 | $22,641.84 |
| White | Daniel | $11,767.61 | $11,767.61 |
| Williams | Richard C. | $914.92 | $914.92 |
| Wright | Bill Michael | $2,906.98 | $2,906.98 |
| York | Corey | $866.99 | $866.99 |
| | **Total** | **$412,427.70** | **$675,144.60** |

# EXHIBIT B

## TO

## SETTLEMENT AGREEMENT
## AND
## RELEASE OF CLAIMS

*Jason Abney, et al.*

*v.*

*RJ Corman Railroad Group, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION
### *Electronically Filed*

| | | |
|---|---|---|
| JASON ABNEY, on behalf of himself and all similarly-situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 5:17-cv-000260-DCR |
| RJ CORMAN RAILROAD GROUP, LLC, | ) ) | |
| Defendant. | ) ) | |

## [PROPOSED] ORDER APPROVING SETTLEMENT AND FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE

The Court has reviewed the terms of the Settlement Agreement reached by the plaintiffs who filed consent forms in this action ("Opt-in Plaintiffs"), on one hand, and RJ Corman Railroad Group, LLC ("RJ Corman"), on the other. The Court is satisfied that the settlement reached is a fair and reasonable resolution of disputed issues under the Fair Labor Standards Act.

ACCORDINGLY, it is hereby ORDERED AND ADJUDGED as follows:

1.      The Settlement Agreement is APPROVED, including, but not limited to, the distribution of settlement payments determined by Opt-in Plaintiffs' counsel and the attorneys' fees and costs apportioned to Opt-in Plaintiffs' counsel.

3.      The Court DISMISSES WITH PREJUDICE all Opt-in Plaintiffs.

4.      The Court further DISMISSES WITH PREJUDICE this action and the claims of all Opt-in Plaintiffs that were raised or that could have been raised in this action.

5.      Without affecting the finality of this Final Order and Judgment in any way, the

Court retains continuing and exclusive jurisdiction over this action for purposes of resolving

issues relating to administration, implementation, and enforcement of the Settlement Agreement.

IT IS SO ORDERED this ___ day of February, 2018.


_____

Honorable Edward B. Atkins
United States Magistrate Judge